# United States Bankruptcy Court
## Middle District of Pennsylvania

In re: <u>TEBERIO PROPERTIES, LLC,</u>  Case No. <u>5-18-bk-04214</u>
        Debtor-in-Posession

## DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT DATED MARCH 27, 2019

### *Table of Contents*

I. Introduction .................................................................................................. 2

    II. Background ............................................................................................. 3

    III. Summary of Plan .................................................................................... 5

        A. Purpose of Plan .................................................................................. 5

        B. Unclassified Claims ........................................................................... 5
            1. Administrative Expenses .............................................................. 5
            2. Priority taxes ................................................................................. 5

        C. Classes of Claims .............................................................................. 6
            1. Secured Claims ............................................................................. 7
            2. General Unsecured Claims ......................................................... 11

        D. Means of Implementing the Plan ..................................................... 11

        E. Risks of the Plan ............................................................................... 12

        F. Executory Contracts ......................................................................... 12

        G. Tax Consequences ........................................................................... 12

    IV. Confirmation Requirements and Procedure .......................................... 13

        A. Who may vote or object .................................................................. 13

        B. Votes necessary to confirm plan ..................................................... 14

        C. Liquidation Analysis ....................................................................... 15

        D. Feasibiltiy ........................................................................................ 15

    V. Effect of Confirmation ........................................................................... 16

Exhibits:
      A. Liquidation Analysis
      B. Projected rental income and expense

A copy of the proposed PLAN OF REORGANIZATION relating to this Disclosure statement is included as a separate attachment.

I. **INTRODUCTION**

This is the First Amended Disclosure Statement ("Disclosure Statement") in the chapter 11 case of TEBERIO PROPERTIES, LLC ("Debtor"). This Disclosure Statement contains information about the Debtor and describes the First Amended Plan of Reorganization ("Plan") filed by the Debtor March 27, 2019 A full copy of the Plan is sent with this Disclosure Statement. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 6-11 of this Disclosure Statement. General unsecured creditors in Class 18 will receive a distribution of 100% of their allowed claims.

A. **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B. **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed. Please refer to the Orders of the Bankruptcy Court setting the deadlines and procedures related to the approval of the Disclosure Statement and Plan.

1. *Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan*

The hearings at which the Court will determine whether to approve this Disclosure Statement and confirm the Plan will be set by Orders of the Bankruptcy Court and sent to creditors as required.

2. *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot to counsel for the Debtor-in-Possession as indicated on the ballot form. See section IV(A) on page 12 below for a discussion of voting eligibility requirements. Your ballot must be received by the deadline set by Order of the Bankruptcy Court or it will not be counted. The deadline is indicated on the ballot form.

2

3. *Deadline for Objecting to the Adequacy of Disclosure or Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court by the deadline set in the Order of the Bankruptcy Court.

4. *Identity of Person to Contact for More Information*

For additional information about the Plan, you may contact Debtor's counsel: Lisa M. Doran, Esq, 69 Public Square, STE 700, Wilkes-Barre, PA 18701, telephone 570-823-9111.

C. **Disclaimer**

***The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

II. **BACKGROUND**

A. **Description and History of the Debtor's Business**

The Debtor is a limited liability corporation which was incorporated with the Pennsylvania Department of State in 2001. The Debtor was formed to acquire real property in Luzerne County, PA to rent to both residential tenants and small commercial tenants. At the time of the bankruptcy filing, the Debtor owned approximately seven properties, which are either currently rented out, or are being rehabilitated for sale or rental.

B. **Events Leading to Chapter 11 Filing**

The Debtor refinanced and consolidated loans at a higher interest rate than anticipated. Cash flow issues with the Debtor and related entities resulted. ESSA Bank and NBT filed confessions of judgment against the Debtor, and the Chapter 11 was filed to restructure and repay the creditors and avoid forced sales.

C. **Insiders of the Debtor**

The Debtor is owed 50% by Linda Teberio and 50% by John Teberio. In addition there are two insider affiliates of the Debtor: JLAN Properties, LLC and LAT Realty, LLC, which also own rental real property.

D. **Management of the Debtor Before and During the Bankruptcy**

The Debtor's properties have been managed by Linda Teberio and John Teberio. This continues postpetition.

3

Case 5:18-bk-04214-RNO    Doc 50    Filed 03/27/19    Entered 03/27/19 11:17:46    Desc
Main Document    Page 3 of 19

E.  **Significant Events During the Bankruptcy Case**

- The Court approved the employment of Doran & Doran, PC as general counsel The Debtor continues to manage the rental properties.
- The Debtor has evaluated properties for income potential or sales to best allow for repayment of creditors.

F.  **Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions, because the plan is paying 100% to creditors.

G. **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

H.  **Current and Historical Financial Conditions**

The identity and fair market value of the estates' assets as listed on the Schedules filed in this Bankruptcy case are as follows:

| ASSET | PETITION VALUE |
|---|---|
| 109 Thomas Avenue, Kingston PA | 250,000.00 |
| 40 Pierce St, Kingston, PA | 200,000.00 |
| 43-45 Pierce St, Kingston, PA | 200,000.00 |
| 15 South Welles St, Kingston PA | 90,000.00 |
| 201-203 Pierce St, PA | 125,000.00 |
| 452 West 8th St, West Wyoming, PA | 140,000.00 |
| 52 James St, Hanover Township, PA | 25,000.00 |
| Supplies for building maintenance | 500.00 |
| Storage cabinets and appliances | 2,000.00 |
| Interest in Nationwide Habitational and Comercial Umbrella policy | 1.00 |
| Potential claim v. closing agent for failure to pay real estate tax in refi | unknown |
| Total | 1,032,501.00 |

III. **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A. **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

4

B.  **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.  *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses arising in the ordinary course of business after the Petition Date | 0 | Pay in full according to terms of obligation |
| Professional Fees, as approved by the Court. | to be determined | Fees approved by the Bankruptcy Court in excess of retainer will be paid beginning in month 1 of the plan as more fully described in section III(D) below. |
| Office of the U.S. Trustee Fees | to be determined | Any US Trustee fees owed at the time of confirmation will be paid as an administrative expense beginning in month 1 of the plan as more fully described in section III(D) below. |
| TOTAL | $ | |

2.  *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

At this time there are no priority tax claims. Should any be filed, it would be paid in full after administrative claims as described in section III(D) below.

5

C. **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate to the extent allowed as secured claims under § 506 of the Code.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Name of Creditor & Description | Impaired? | Treatment of Secured Claim |
|---|---|---|---|
| 1 | **ESSA** *Claim #8* <br><br> Collateral: 1st mortgage on real property at 452 W 8th St W. Wyoming, and 201-03 Pierce St, Kingston, PA; also judgment by confession entered 5-23-17 in Luzerne Co case # 2017-6635 which is junior lien on all real property <br><br> Secured claim: $121,139.27 <br><br> Arrears: 13,720.17 | no | Debtor will continue to pay regular postpetition monthly payments according to the contract terms. The arrears of $13,720.17 will be cured in 60 monthly installments of **$230.00** beginning the month after payment of Administrative and priority claims. <br><br> ESSA will retain its mortgage lien per the contract until the obligation is paid. <br><br> The Debtor may, at its option, sell property or refinance this obligation at any time and pay the then-existing balance in full or as otherwise agreed between ESSA and the Debtor. |
| 2 | **ESSA** *Claim #9* <br><br> Collateral: 2nd mortgage on real property at 452 W 8th St, West Wyoming, and 201-03 Pierce St, Kingston, PA <br><br> Secured claim: $ 75,113.00 <br> Arrears: 7,641.90 | no | Debtor will continue to pay regular postpetition monthly payments according to the contract terms. The arrears of $7,641.90 will be cured in 60 monthly installments of **$128.00** beginning the month after payment of Administrative and priority claims. <br><br> ESSA will retain its mortgage lien per the contract until the obligation is paid. <br><br> The Debtor may, at its option, sell property or refinance this obligation at any time and pay the then-existing balance in full or as otherwise agreed between ESSA and the Debtor. |
| 3 | **ESSA** *Claim #10* <br> Collateral: multiple parcels of real property and real property owned by JLAN properties; also judgment by confession entered 5-23-17 in Luzerne Co case # 2017-6619 which is junior lien on all real property <br><br> Secured claim: $656,865.04 <br> Arrears: 90,662.70 | no | Debtor will continue to pay regular postpetition monthly payments according to the contract terms. The arrears of $90,662.70 will be cured in 60 monthly installments of **$1,512.00** beginning the month after payment of Administrative and priority claims. <br><br> ESSA will retain its mortgage lien per the contract until the obligation is paid. <br><br> The Debtor may, at its option, sell property or refinance this obligation at any time and pay the then-existing balance in full or as otherwise agreed between ESSA and the Debtor. |

6

Case 5:18-bk-04214-RNO    Doc 50    Filed 03/27/19    Entered 03/27/19 11:17:46    Desc
Main Document    Page 6 of 19

| Class # | Name of Creditor & Description | Impaired? | Treatment of Secured Claim |
|---|---|---|---|
| 4 | **NBT BANK, N.A.**<br><br>*Claim #11*<br><br><u>Collateral</u>: **Judgment by confession** entered 8-24-17 in Luzerne County, case # 2017-9960 creating a junior lien on all of Debtor's real property (and mortgage on non-Debtor property at **183-85 Meade St, Wilkes Barre, PA**)<br><br><u>Estimated secured claim:</u> $31,164.14<br><u>Arrears:</u> 30,831.24 | yes | Debtor will pay the secured claim in full over 60 months at 6% interest for a total monthly payment of **$603.00**. Payments will begin the month after full payment of administrative and priority claims, approximately month #4 of the plan.<br><br>NBT will retain its judicial lien per the contract until the obligation is paid.<br><br>In the event that the Debtor fails to make any of the payments described in this Plan, NBT may serve upon the Debtor and Debtor's counsel a Notice of Default which provides that the Debtor shall have fourteen (14) days to cure any delinquency. However, if the Debtor does not cure the delinquency or provide proof of payment in the 14 day period, the Bank may file a Certificate of Default along with a Final Order, and the Bank shall be entitled to the entry of said Final Order, which unconditionally grants relief from the automatic stay. |
| 5 | **NBT BANK, N.A.**<br><br>*Claim #12*<br><br><u>Collateral</u>: 1st mortgage on real property at **52 James St, Hanover Township, PA** and judgment by confession entered 8-24-17 in Luzerne County, Case #2017-9994 creating a junior lien on all of Debtor's real property.<br><br><u>Estimated secured claim:</u> $ 17,334.94<br><u>Arrears:</u> $9,417.65 | yes | Debtor will continue to pay regular monthly payments obligation according to the contract terms.<br><br>The Debtor is currently finishing renovations on this property and will list the property for sale no later than May 1, 2019. The property will be sold within 12 months of the listing by free and clear sale if necessary. The balance owed to NBT will be paid at closing; provided, however, if the net proceeds will not bring sufficient funds to pay NBT in full, NBT shall have the option of accepting the short sale (and having the deficiency paid with Class 18 creditors) or rejecting the short sale and being allowed to foreclose on the property.<br>If the property does not sell by April 30, 2020 NBT may foreclose on the property, or , at its option, renegotiate with the Debtor for continued listing for sale or payment terms.<br><br>In the event that the Debtor fails to make any of the payments described in this Plan, NBT may serve upon the Debtor and Debtor's counsel a Notice of Default which provides that the Debtor shall have fourteen (14) days to cure any delinquency. However, if the Debtor does not cure the delinquency or provide proof of payment in the 14 day period, the Bank may file a Certificate of Default along with a Final Order, and the Bank shall be entitled to the entry of said Final Order, which unconditionally grants relief from the automatic stay.<br><br>NBT will retain its mortgage lien per the contract until the obligation is paid. |

| Class # | Name of Creditor & Description | Impaired? | Treatment of Secured Claim |
|---|---|---|---|
| 6 | LUZERNE COUNTY TAX CLAIM BUREAU<br><br>Collateral: real estate tax lien on **43 Pierce St, Kingston, PA**<br><br>Estimated secured claim: $ 4,150.18 as of filing date. Approx 6939.75 as of 1/2019 including 2018 tax due. | yes | The obligation of $6939.75 will be amortized over 60 months at 9% interest, for a monthly payment of **144.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Tax Claim Bureau will retain its statutory liens until the obligation is paid.<br><br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 7 | LUZERNE COUNTY TAX CLAIM BUREAU<br><br>Collateral: real estate tax lien on **52 James St, Hanover Twp, PA**<br><br>Estimated secured claim: $2,346.23 plus 2018 tax | yes | The Debtor will list the property for sale no later than May 1, 2019. The property will be sold within 12 months of the listing. The balance owed to the tax claim bureau will be paid at closing<br>If the property does not sell by April 30, 2020 the creditor may proceed to tax sale or renegotiate with the Debtor for payment terms.<br><br>The Tax Claim Bureau will retain its statutory liens until the obligation is paid. |
| 8 | LUZERNE COUNTY TAX CLAIM BUREAU<br><br>Collateral: real estate tax lien on **lot adjacent to 52 James St, Hanover Twp, PA.**<br><br>Estimated secured claim: $ 949.99 plus 2018 tax | yes | The Debtor will list the property for sale no later than May 1, 2019. The property will be sold within 12 months of the listing. The balance owed to the tax claim bureau will be paid at closing<br>If the property does not sell by April 30, 2020 the creditor may proceed to tax sale or renegotiate with the Debtor for payment terms.<br><br>The Tax Claim Bureau will retain its statutory liens until the obligation is paid. |
| 9 | LUZERNE COUNTY TAX CLAIM BUREAU<br><br>Collateral: real estate tax lien on **40 Pierce St, Kingston, PA**<br><br>Estimated secured claim: $ 4,385.81 as of filing date. Approx $8,688.87 as of 1/2019 including 2018 tax due. | yes | The obligation of $8,688.87 will be amortized over 60 months at 9% interest, for a monthly payment of **180.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Tax Claim Bureau will retain its statutory liens until the obligation is paid.<br><br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 10 | LUZERNE COUNTY TAX CLAIM BUREAU<br><br>Collateral: real estate tax lien on **201-03 Pierce St, Kingston, PA**<br><br>Estimated secured claim: $ 3,718.84 as of filing date. Approx 7,500.64 as of 1/2019 including 2018 tax due | yes | The obligation of $7500.64 will be amortized over 60 months at 9% interest, for a monthly payment of **156.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Tax Claim Bureau will retain its statutory liens until the obligation is paid.<br><br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |

| Class # | Name of Creditor & Description | Impaired? | Treatment of Secured Claim |
|---|---|---|---|
| 11 | **LUZERNE COUNTY TAX CLAIM BUREAU**<br><br>Collateral: real estate tax lien on **15 S. Welles St, Kingston, PA**<br><br>Estimated secured claim: 2,073.08 as of filing date. Approx 4118.74 as of 1/2019 including 2018 tax due. | yes | The obligation of $4118.74 will be amortized over 60 months at 9% interest, for a monthly payment of **86.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Tax Claim Bureau will retain its statutory liens until the obligation is paid.<br><br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 12 | **LUZERNE COUNTY TAX CLAIM BUREAU**<br><br>Collateral: real estate tax lien on **109-111 N. Thomas Ave, Kingston, PA**<br><br>Estimated secured claim: $ 6,510.54 as of filing date. Approx 11,300.58 as of 1/2019 including 2018 tax due. | yes | The obligation of $11,300.58 will be amortized over 60 months at 9% interest, for a monthly payment of **235.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Tax Claim Bureau will retain its statutory liens until the obligation is paid.<br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 13 | **LUZERNE COUNTY TAX CLAIM BUREAU**<br><br>Collateral: real estate tax lien on **452 W. 8th St, West Wyoming, PA**<br><br>Estimated secured claim: $ 3,502.69 as of filing date. Approx 6968.43 as of 1/2019 including 2018 tax due. | yes | The obligation of $6968.43 will be amortized over 60 months at 9% interest, for a monthly payment of **145.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Tax Claim Bureau will retain its statutory liens until the obligation is paid.<br><br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 14 | **LUZERNE COUNTY FLOOD PROTECTION**<br>Claim #1<br><br>Collateral: 43 Pierce St, Kingston, PA<br><br>secured claim: $270.21 | Yes | The obligation of $270.21 will be amortized over 60 months at 6% interest, for a monthly payment of **6.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Creditor will retain its lien until the obligation is paid.<br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 15 | **LUZERNE COUNTY FLOOD PROTECTION**<br>Claim #2<br><br>Collateral: 40 Pierce St, Kingston, PA<br><br>secured claim: $2,378.40 | Yes | The obligation of $2,378.40 will be amortized over 60 months at 6% interest, for a monthly payment of **46.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Creditor will retain its lien until the obligation is paid.<br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |

| Class # | Name of Creditor & Description | Impaired? | Treatment of Secured Claim |
|---|---|---|---|
| 16 | **LUZERNE COUNTY FLOOD PROTECTION** Claim #3<br><br>Collateral: 109-111 Thomas St, Kingston, PA<br><br>secured claim: $2,278.12 | Yes | The obligation of $2278.12 will be amortized over 60 months at 6% interest, for a monthly payment of **46.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Creditor will retain its lien until the obligation is paid.<br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 17 | **LUZERNE COUNTY FLOOD PROTECTION** Claim #4<br><br>Collateral: 15 S. Welles St, Kingston, PA<br><br>secured claim: $671.71 | Yes | The obligation of $671.71 will be amortized over 60 months at 6% interest, for a monthly payment of **13.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Creditor will retain its lien until the obligation is paid.<br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 18 | **LUZERNE COUNTY FLOOD PROTECTION** Claim #5<br><br>Collateral: 201 Pierce St, Kingston, PA<br><br>secured claim: $948.04 | Yes | The obligation of $948.04 will be amortized over 60 months at 6% interest, for a monthly payment of **19.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Creditor will retain its lien until the obligation is paid.<br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 19 | **LUZERNE COUNTY FLOOD PROTECTION** Claim #6<br><br>Collateral: 45 Pierce St, Kingston, PA<br><br>secured claim: $277.94 | Yes | The obligation of $277.94 will be amortized over 60 months at 6% interest, for a monthly payment of **6.00** with a final additional payment if needed to fully pay the obligation. Payments will begin the month after payment of administrative and priority claims<br><br>The Creditor will retain its lien until the obligation is paid.<br>The Debtor may, at its option, sell the property and pay the then-existing balance in full. |
| 20 | **RITA SANDERS & EARL MONROE**<br><br>Collateral: judgment lien on all Debtor's real property entered 8-10-16, Luzerne County case # 2016-4712<br><br>secured claim: $2,439.46 | Yes | Debtor does not have current contact information for this judgment creditors. If creditors do contact Debtor in the future, Debtor will make payment arrangements.<br><br>The Creditor will retain its liens until the obligation is paid or the lien lapses under applicable law. |

2. ***Class of General Unsecured Claims***
Class 21 includes all allowed General Unsecured claims. General unsecured claims are not secured by property of the estate and are not entitled to priority.

10

Case 5:18-bk-04214-RNO    Doc 50    Filed 03/27/19    Entered 03/27/19 11:17:46    Desc
Main Document    Page 10 of 19

a. The following are general unsecured claims, where either the creditor has filed a proof of claim or the claim was included on the Debtor's schedules and is therefore a deemed claim. The Debtor may still object to the allowance of these claims consistent with the Plan.

| Name of Creditor | Claim # (if filed) | Proof of claim amount (or scheduled amount if no claim was filed) |
|---|---|---|
| Edwards & Amerise | | $3,000.00 |
| William Higgs | | $1,700.00 |

Class 21 also includes any deficiency claim of NBT after sale of James St property.

| **b. Treatment of Class 21 General Unsecured Claims:** |
|---|
| Beginning after the 60-month payment plans for classes 1,-4, 6, & 9-19 claims are paid in full, the Debtor will continue to pay the sum of $3,555 per month pro-rata to allowed general unsecured creditors in Class 21 until 100% of such claims are paid in full. |

3. *Class of Equity Interest Holders—Class 22*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company ("LLC"), the equity interest holders are the members.

The members of the Debtor are Linda Teberio and John Teberio. The existing equity holders will retain their interest in the Debtor.

THIS PLAN MAY VIOLATE THE ABSOLUTE PRIORITY RULE.

D. **Means of Implementing the Plan**

1. *Source of Payments*

Payments and distributions under the Plan will be funded by cash flow from rental income and by sales of certain parcels of real property. The monthly payment from cash flow to fund the plan will be $3,555.00. See projections in *Exhibit B*.

2. *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Linda Teberio | Member | Yes | Managing member | * |
| John Teberio | Member | Yes | member | * |

*No fixed amount of compensation, but members receive distributions from the LLC from the net income toward expenses.

E.  **Risk Factors**

The proposed Plan has the following risks which could affect the net income from the rental properties:
- any drop in rental income beyond the 10% vacancy rate which has been considered in the projections;
- unexpencted increase in ordinary expenses associated with the rental units;
- emergency repair items beyond amounts included in the budget.

F.  **Executory Contracts and Unexpired Leases**

The only executory contracts or leases which the Debtor has are short-term leases with residential and commercial tenants. The Debtor is not rejecting any of those leases. They will expire on their own terms and/or be renewed in the ordinary course of the Debtor's business.

G.  **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

IV.  **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.  **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Certain parties in interest are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that party has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

- Debtor believes that classes 4 through 21 are impaired and that holders of claims in each of these classes are entitled to vote to accept or reject the Plan.
- Debtor believes that classes 1 through 3 are unimpaired and that holders of claims in each of these classes, do not have the right to vote to accept or reject the Plan.

12

1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was January 26, 2019.***

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:
- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

C. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as *Exhibit A*.

D. **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. The Debtor will commence making monthly payments of $3,555 beginning the first month after the Effective Date.

2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Debtor has provided projected financial information which are listed in *Exhibit B*.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of approximately $58,007.04. The Plan projects rental income similar to current levels, but with a 90% vacancy rate adjustment. The projections also take into account both ordinary expenses and larger expenses which do not arise on a monthly basis. The final Plan payment is expected to be paid within 70 months after the Effective Date.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V. EFFECT OF CONFIRMATION OF PLAN

### A. DISCHARGE OF DEBTOR

On the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B. **Effective Date:**

The Effective Date of this Plan is the fifteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the stay of order terminates, provided that the confirmation order has not been vacated.

### C. Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### D. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

TEBERIO PROPERTIES, LLC:

BY: *(signature)* Linda Teberio
Linda Teberio, Managing Member

Attorneys for Teberio Properties, LLC:
Doran & Doran, PC

BY: *(signature)*
Lisa M. Doran, Esq
69 Public Square STE 700
Wilkes-Barre, PA 18701
570-823-9111    fax 570-829-3222

**ATTACHED EXHIBITS**

A. Liquidation Analysis
B. Cash Flow Projections

16

Case 5:18-bk-04214-RNO    Doc 50    Filed 03/27/19    Entered 03/27/19 11:17:46    Desc
Main Document    Page 16 of 19

**Exhibit A** – Liquidation Analysis as of Petition Date

*Plan Proponent's Estimated Liquidation Value of Assets*

**Assets**
| | |
|---|---|
| a. Cash on hand | $ 0.00 |
| b. Maintenance supplies | $ 0.00 |
| c. Storage cabinets and appliances | $ 500.00 |
| d. Building & Land ($1,030,000 less 10% selling exp.) | $ 2,000.00 |
| e. Lawsuits or other claims against third-parties (Debtor does not anticipate pursuing at this time) | $ 927,000.00 |
| f. Other intangibles (such as avoiding powers actions) | $ 0.00 |
| ***Total Assets at Liquidation Value*** | **$ 929,500.00** |

**Less:**
Secured creditors' recoveries                         $ 931,586.46*

**Less:**
Chapter 7 trustee fees and expenses**                 $ 10,000.00

**Less:**
Chapter 11 administrative expenses                    $ 10,000.00

(1) Balance for unsecured claims                      $ 0.00

(2) Total dollar amount of unsecured claims           $ 4,700.00

***Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:***   $ 0%

***Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:***   $ 100%

---

*Note: Certain secured creditors have liens which also extend to collateral owned by third parties in addition to the collateral owned by the Debtor.

** it is unclear if the Trustee would have expenses if the secured creditors' debts would consume most of the assets; but if marshalling of assets occurred, then an estate could be opened.

**Exhibit B** Projections of Cash Flow and Earnings for Post-Confirmation Period

**Exhibit B** Projections of Cash Flow and Earnings for Post-Confirmation Period

PROFORMA
Teberio Properties LLC 2019 ( projected)yearly & monthly

| | 43-45 Pierce | 40 Pierce | 201-203 Pierce | 109 North Thomas | 452 West 8th | 15 South Welles | 52 James | Annual Total Teberio Prop | Projected Monthly | Adjusted for 10% vacancy | Monthly Projections |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Income/Revenue | 43,980.00 | 50,700.00 | 19,800.00 | 61,500.00 | 19,080.00 | 15,600.00 | 0.00 | 210,660.00 | 17,555.00 | 15,799.50 | 15,799.50 |
| Expenses | 33,435.00 | 27,676.00 | 12,110.00 | 38,645.00 | 9,215.00 | 5,900.00 | 4,606.00 | 131,587.00 | 10,965.58 | | 10,965.58 |
| P/L MONTHLY & YEARLY | 10,545.00 | 23,024.00 | 7,690.00 | 22,855.00 | 9,865.00 | 9,700.00 | -4,606.00 | 79,073.00 | 6,589.42 | | 4,833.92 |
| | | | | | | | 0.00 | | | | |
| | 43 Pierce | 40 pierce | 201-203 Pierce | 109 Thomas | 452 W 8th | 15welles | 52 James | Total | | | |
| TOTAL Utilities - all heat/sewer/water/common € | 12,500.00 | 14,500.00 | 360.00 | 16,500.00 | 1,500.00 | 360.00 | 240.00 | 45,960.00 | | | |
| Loan payments | 0.00 | 891.00 | 545.00 | 4,345.00 | 0.00 | 0.00 | 246.00 | 6,027.00 | | | |
| Flood levy fees | 220.00 | 220.00 | 120.00 | 400.00 | 0.00 | 100.00 | 0.00 | 1,060.00 | | | |
| Rain tax | 240.00 | 240.00 | 240.00 | 440.00 | 240.00 | 240.00 | 0.00 | 1,640.00 | | | |
| KingstonBoro license fee | 150.00 | 150.00 | 50.00 | 200.00 | 0.00 | 50.00 | 0.00 | 600.00 | | | |
| Real Estate Taxes | 4,800.00 | 3,980.00 | 2,900.00 | 4,635.00 | 2,825.00 | 1,800.00 | 2,220.00 | 23,160.00 | | | |
| Maintenance | 600.00 | 600.00 | 200.00 | 600.00 | 200.00 | 200.00 | 200.00 | 2,600.00 | | | |
| hot water heater' | 850.00 | 0.00 | 895.00 | 0.00 | 895.00 | 0.00 | 0.00 | 2,640.00 | | | |
| New furnaces | 5,500.00 | 0.00 | 2,500.00 | 2,500.00 | 0.00 | 0.00 | 0.00 | 10,500.00 | | | |
| Insurance(liabl) | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 8,400.00 | | | |
| Repairs | 1,875.00 | 2,200.00 | 900.00 | 2,500.00 | 600.00 | 600.00 | 0.00 | 8,675.00 | | | |
| Garbage | 1,500.00 | 0.00 | 0.00 | 1,500.00 | 0.00 | 0.00 | 0.00 | 3,000.00 | | | |
| carpeting | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| Supplies | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,400.00 | | | |
| Appliances | 1,000.00 | 1,000.00 | 500.00 | 1,000.00 | 0.00 | 0.00 | 0.00 | 3,500.00 | | | |
| Travel/actual gas | 1,000.00 | 1,000.00 | 500.00 | 1,000.00 | 500.00 | 500.00 | 300.00 | 4,800.00 | | | |
| Reserves | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 500.00 | 0.00 | 5,500.00 | | | |
| Advertising | 800.00 | 495.00 | 0.00 | 625.00 | 55.00 | 150.00 | 0.00 | 2,125.00 | | | |
| Legal | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| *Total Expenses* | 33,435.00 | 27,676.00 | 12,110.00 | 38,645.00 | 9,215.00 | 5,900.00 | 4,606.00 | 131,587.00 | | | |